IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE SERNA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-2469-N |
| | § | |
| TRANSPORT WORKERS | § | |
| UNION OF AMERICA, AFL-CIO, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Plaintiffs' motion for class certification and appointment of class counsel [Doc. 14] ("Mot. Certify Class").  For the following reasons, the Court grants Plaintiffs' motion.

### I. THE LABOR DISPUTE

Defendant Transport Workers Union of America ("TWU") is the collective bargaining representative for over 50,000 railroad and airline workers under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-88.  Def.'s Resp. Mot. Certify Class 2 [33] ("Def.'s Resp.").  TWU provides collective bargaining services such as negotiating collective bargaining agreements with employers and enforcing and administering these agreements.  *Id.* at 3.  Plaintiffs Jose Serna, Mary Richardson, Roberto Cruz, Santos Cordero, Sari Madera, Ralph Anderson, Warren Lambert, Greg Hofer, and Kent Hand ("Plaintiffs") are, or at one point were, airline workers such as flight attendants and fleet-service workers who seek to challenge certain TWU policies.  *See* Pls.' Br. Supp. Pls.' Mot. Class Certification 1 [15]

("Pls.' Br."). Plaintiffs are, or at one point were, nonmembers of the union. Pls.' First Am. Compl. 4 [37]. Their complaint contains three counts. First, Plaintiffs allege that the RLA's authorization of compelled union fees violates the First Amendment. *Id.* 11–12. Second, Plaintiffs allege that the opt-out choice structure for union fees violates the First Amendment. *Id.* at 12–14. Third, Plaintiffs allege that the requirements that nonmembers renew their objections annually and that nonmembers fund nonbargaining expenses through "forced loans" violate the First Amendment. *Id.* at 14–15. Plaintiffs request declaratory, injunctive, and monetary relief. *Id.*

Plaintiffs seek to certify a class defined as all former, current, and future nonmember employees represented by TWU and compelled to pay compulsory union fees as a condition of employment.[1] *See* Pls.' Br. 5. The Court previously ordered that further discovery was necessary to determine whether to certify the proposed class. Order [45]. The parties filed supplemental briefs on the issue of class certification following this discovery period.

## II. THE COURT GRANTS PLAINTIFFS' MOTION TO CERTIFY

### A. Class Action Certification Standard

Under Federal Rule of Civil Procedure 23, the Court must "determine by order whether to certify the action as a class action." FED R. CIV. P. 23(c). The party seeking certification bears the burden of showing that class certification is appropriate. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). The Court has wide discretion in

---

[1]The plaintiffs seeking class representative status are Cruz, Cordero, Anderson, and Madera. *See* Pls.' First Am. Compl. 15.

determining whether to certify a class; however, that discretion must be exercised within the bounds of Rule 23. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Furthermore, in making this determination, the Court must undertake a rigorous analysis of Rule 23's prerequisites by probing beyond the pleadings to understand the claims, defenses, and relevant facts. *See Unger*, 401 F.3d at 321. Although the Court does not consider the merits of the plaintiffs' claims in determining whether to certify the proposed class, the Court must consider the "the nature and range of proof necessary to establish the plaintiffs' substantive allegations" if it is adequately to conduct the rigorous analysis called for under Rule 23. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 2006 WL 2521183, at *4 (D. Ariz. 2006); *see Castano*, 84 F.3d at 741 ("In order to make the findings required to certify a class action under Rule 23(b)(3) . . . one must initially identify the substantive law issues which will control the outcome of the litigation." (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978))).

A case may proceed as a class action only if the party moving for certification demonstrates that it has met all four requirements of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). *See Feder v. Elec. Data Sys.*, 429 F.3d 125, 129 (5th Cir. 2005). Under Rule 23(a), the moving party must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4)

the representative parties will fairly and adequately protect the interests of the class (adequacy).  FED. R. CIV. P. 23(a)

In this case, Plaintiffs rely on the requirements of Rule 23(b)(1)(A) and Rule 23(b)(2) in support of class certification, and alternatively rely on the requirements of Rule 23(b)(3). To satisfy the requirements of Rule 23(b)(1)(A), Plaintiffs must show that prosecuting separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23(b)(1)(A).  Under Rule 23(b)(2), Plaintiffs must establish that TWU "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).  To satisfy Rule 23(b)(3), Plaintiffs must show that questions of law or fact common to the class predominate and a class action is superior to any other available method of resolution.  FED. R. CIV. P. 23(b)(3).

### B.  Plaintiffs Meet All of the Requirements of Rule 23(a)

### 1.  The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable. – There is no magic number of class members required to satisfy Rule 23(a)'s numerosity requirement. *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) (citing *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013)).  Rather, courts considering the numerosity requirement look to several factors, such as "size of the class, ease of identifying members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).  Plaintiffs need

only demonstrate "some evidence" or a "reasonable estimate" of the number of purported class members to satisfy the first requirement of Rule 23(a).  *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) (citing *Penderson v. La. State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000)).

Discovery in this matter has indicated that there are at least 177 members of the proposed class and that these individuals reside in 21 states.  Pls.' Am. Supplemental Br. 2 [53] ("Pls.' Supplemental Br.").  The number and geographic diversity of these individuals is sufficient to satisfy the numerosity requirement.  Moreover, TWU has not disputed the numerosity requirement.  The Court accordingly finds that Plaintiffs have satisfied the first requirement under Rule 23(a).

*2.   **There Are Questions of Law or Fact Common to the Class.*** – To satisfy the second  requirement of Rule 23(a), the claims of every class member must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks omitted)).  Rule 23(a)(2) necessitates that a common issue of law or fact will resolve a central issue of each class member's claims.  *Id.*

The Court finds that there are common issues of law and fact in the instant case. Every proposed class member must establish (1) whether the imposition of a compulsory union fee on TWU nonmembers is constitutional; (2) whether the requirement that

nonmembers opt out of TWU's political, ideological, and other non-bargaining expenses violates the Railway Labor Act or the First Amendment; (3) whether TWU's requirement that nonmembers renew their objections annually is lawful; and (4) whether TWU may subject nonmembers to payroll deductions to make an "involuntary loan" to support TWU's non-bargaining expenses. *See* Pls.' Br. 7–8. Additionally, the case stems from the common acts of TWU in collecting the challenged fees in accordance with its policies. *See* Pls.' Supplemental Br. 3.

TWU contends that under the Supreme Court's *Wal-Mart* decision, plaintiffs must demonstrate that they and the members of the proposed class have "'the same interest and suffer the same injury.'" Def.'s Resp. 11 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011)). However, the Fifth Circuit recently struck down the same argument in *In re Deepwater Horizon*, where the Fifth Circuit clarified that "the legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects–the damages–are diverse." 739 F.3d 790, 810–11 (5th Cir. 2014). In fact, in *Wal-Mart*, the Court noted that "a companywide discriminatory pay and promotion policy," would have satisfied the "same injury test" under Rule 23(a)(2). *Wal-Mart Stores*, 131 S. Ct. at 2553. Here, Plaintiffs' allegations regarding the legality of TWU's fee policies are sufficient to satisfy the commonality requirement.

TWU also contends that there is no commonality because Plaintiffs have not established that all members of the proposed class have the same interests of the Plaintiffs

in, for example, "undermining their union financially and thus undermining its ability to operate effectively on their behalf." Def.'s Resp. 11. TWU suggests other reasons that an employee might choose not to join the Union. *Id.* at 12. The inquiry under the commonalty requirement is whether there are common issues of law or fact, not whether the interests of the class members are aligned. *Walmart v. Dukes* makes clear that even a single common question is sufficient to satisfy the commonality requirement. 131 S. Ct. at 2551 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." (alteration in original) (citation omitted)).

There is no requirement under the commonality prong that Plaintiffs establish the nonexistence of a conflict of interest. *See Ned-Sthran v. Methodist Hospitals of Dallas*, 2008 WL 5420601, at *2 (N.D. Tex. 2008) (discussing the standard for commonality and noting that "[t]he interests and claims of each plaintiff need not be identical"). The Court therefore considers TWU's arguments regarding potential conflicts of interest under the adequacy analysis below. Accordingly, Plaintiffs have established that there are common issues of law and fact and the second requirement of Rule 23(a) is satisfied.

*3. The Representative Parties' Claims are Typical of the Class.* – The third requirement of Rule 23(a) requires the claims of the representative parties be typical of the proposed class members' claims. The test for typicality is not demanding, *see Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993), and is satisfied if the representative plaintiffs' claims arise out of the same event or course of conduct as the other proposed class members', or are based on the same legal theory. *James*, 254 F.3d at 571. The Court finds

ORDER – PAGE 7

the representative plaintiffs' claims are typical of the claims of the proposed class because they all arise out of the same issue: the legality of the above-mentioned TWU policies. The fact that each proposed class member might have incurred different monetary damages alone does not refute the typicality requirement in this case. Additionally, TWU does not challenge the Plaintiffs' ability to establish typicality. The Court accordingly finds that Plaintiffs have established the third requirement under Rule 23(a).

### 4. Cruz, Cordero, Madera, and Anderson Are Adequate Representatives of the Proposed Class.

– To show adequacy of representation, a plaintiff must show that (1) the plaintiff's counsel has the zeal and competence to represent the class; (2) the proposed class representative is willing and able to take an active roll in controlling the litigation; and (3) the absence of conflict and antagonism between the named plaintiffs and the interest of the class. *See Feder*, 429 F.3d at 130; *Unger*, 401 F.3d at 321. The Court finds that Plaintiffs have established adequacy of representation.

Plaintiffs' counsel has the zeal and competence to represent the class and the proposed class representatives are willing and able to pursue the litigation. The National Right to Work Legal Defense Foundation, Inc. (the "Foundation") is committed to funding the lawsuit, *see* Pls.' Br. 10; that precludes concern regarding the potentially prohibitive cost of litigation. Additionally, Plaintiffs' attorneys are experienced in litigating labor and employment cases and have articulated a commitment to pursing this case zealously. *Id.* at 11–13. Plaintiff class representatives have declared their willingness to pursue this matter

in a way that protects the proposed class. *Id.* at 9; Pls.' Supplemental Br. 7. Therefore, the first and second requirements of Rule 23(a)(4) have been satisfied.

Finally, there is no antagonism or conflicts between the class representative and the interest of the class. Plaintiffs have the burden of showing that class certification is appropriate, and this includes the burden of showing that the class representatives adequately represent the class. *See Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982). Plaintiffs met their burden for establishing adequacy of representation in their brief in support of their motion to certify. *See* Pls.' Br. 9–10 ("Because their claims are typical and common of, and identical to, those of the class members, by protecting their own interests through vigorous litigation, Plaintiff class representatives will also protect the same rights of the class members."); *id.* at 13 ("In this lawsuit, such conflict or antagonism between interests does not exist because the Plaintiff class representatives' and the class members' claims are aligned and arise out of the same common actions and policies taken by TWU against TWU nonmembers, and because Plaintiff class representatives seek the same relief for themselves as they do for the class members." (citation omitted)).

Yet, TWU asserts that there are conflicts of interest between the class representatives and the proposed class that prevent adequate representation. TWU must, however, have some support for its alleged conflicts. *See Wagner v. Prof'l Eng'rs in Cal. Gov't*, 3 F. App'x 594, 595 (9th Cir. 2001) ("Without some evidence that members of the putative class disagree with Plaintiffs generally, or with their claim for punitive damages specifically, we cannot evaluate the district court's conclusion that Plaintiffs and their counsel are inadequate

. . . ."); *Littlewolf v. Hodel*, 681 F. Supp. 929, 937 (D.D.C. 1988), *aff'd sub nom. Littlewolf v. Lujan*, 877 F.2d 1058 (D.C. Cir. 1989) ("While actual antagonism between class members, or a "strong likelihood" of antagonism, would defeat class certification . . . incantations of the *potential* for antagonism are insufficient." (internal citations omitted)).

With one narrow exception, TWU has not identified any class members with real antagonism or a conflict of interest in this case. Although TWU has presented evidence that nonmembers have chosen not to join the union for a variety of reasons, *see* Def.'s Supplemental Br. 4, App. 6–8, this does not necessarily mean that they oppose the claims and relief sought in the matter. *See James*, 254 F.3d at 571 ("Differences between the named plaintiffs and class members render the named plaintiffs inadequate only if those differences create conflicts between the named plaintiffs' interest and the class members' interests."). To assert otherwise is speculation that cannot alone disprove the adequacy requirement. *See In re S. Cent. States Bakery Products Antitrust Litig.*, 86 F.R.D. 407, 418 (M.D. La. 1980) ("A naked allegation of antagonism cannot defeat class certification; there must be an actual showing of a real probability of a potential conflict which goes to the subject matter of the suit.").

TWU additionally presents evidence that some members of the class have since joined the union and argues that these individuals would be opposed to the relief sought. *See* Def.'s Supplemental Br. 3. Although this asserted conflict is potentially illusory, the Court will exclude these individuals from the class. Therefore, any former nonmember that has since joined the union is not a class member.

ORDER – PAGE 10

The only evidence TWU has presented of an actual conflict of interest is the deposition of Jose Serna who, as a former nonmember, would be a member of the putative class. In his deposition, Serna noted that he was not opposed to paying union dues for the handling of grievances. *Id.* App. 26. This interest is partially opposed to count one of the amended complaint which seeks to make *all* union payments voluntary. Apart from Serna, TWU has offered no evidence of additional proposed class members whose interests actually conflict with those of the class representatives. Serna is just one class member, and he objects to a minor part of just one of several claims. This alone is insufficient to establish inadequacy of representation. *Horton*, 690 F.2d at 485 (noting that "courts have been content simply to observe that unanimity can never be achieved in large classes and have proceeded on that basis to certify a class."); *see Wyatt By and Through Rawlins v. Poundstone*, 169 F.R.D. 155, 162 (M.D.Ala.1995) (noting that, in certain circumstances, "it would be impossible to obtain and maintain 100% agreement within the class"). Additionally, to the extent that Serna does not want to participate in this action, he would be able to opt out of the class under the provisions of Rule 23(c)(2). *See* FED. R. CIV. P. 23(c)(2).

TWU relies heavily on *Gilpin v. American Federation of State, Cnty., & Mun. Emps., AFL-CIO*, 875 F.2d 1310 (7th Cir. 1989) and its progeny in support of its assertion that potential conflicts of interest prevent Plaintiffs from establishing adequacy of representation. In *Gilpin*, the Seventh Circuit refused to find that a district court erred in its denial of certification to a class of nonunion employees, concluding "[a] potentially serious conflict of interest within the class precluded the named plaintiffs from representing the entire class

adequately."  875 F.2d at 1313 (citing Fed. R. Civ. P. 23(a)(4)).  The court noted that different types of employees could decline to join the union for different reasons.  *Id.*  An employee might be hostile to unions on political grounds or might just be disagreeable to paying more for union representation than is required.  *Id.*  "The two types have potentially divergent aims.  The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost or representation as possible to other workers."  *Id.*  The court noted that, should the union be required to pay restitution as requested by the Plaintiffs, it might ruin the union despite the fact that the "free riders" have no desire to impair the union's ability to represent them.  Therefore, the court determined that "The National Right to Work Foundation is not an adequate litigation representative of [the free riders]." *Id; see also Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1531 (6th Cir. 1992) ("The publishers of [a newsletter] could have interests that conflict with those of other nonunion employees who are merely "free riders."); *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 299 (4th Cir. 1991) ("We agree with [*Gilpin*].  The plaintiffs, once again represented by the National Right to Work Legal Defense Foundation, are not adequate representatives under Rule 23.").

*Gilpin* is factually distinguishable from this case because here the primary relief sought is declaratory and injunctive.  In *Gilpin*, the proposed class sought restitution for "*all* the bargaining unit's nonunion employees of the *entire* agency fees collected by the union." 875 F.2d at 1313 (emphasis in original).  As noted in Plaintiffs' brief in support of their motion to certify, "Plaintiff class representatives' interest[s] are not antagonistic to class

ORDER – PAGE 12

members' interests because the claims in this lawsuit seek to protect the constitutional and statutory rights of all class members through permanent *injunctive and declaratory relief* against TWU's standard, uniform policies and requirements against TWU members." Pls.' Br. 13 (emphasis added). The Court thus finds on this factual record that TWU has failed to show the existence of two sub-classes with antagonistic goals in this litigation, as existed in *Gilpin*. Moreover, making nonmember support voluntary would not necessarily "ruin the union or impair its ability to represent them effectively," as was the case with the requested relief in *Gilpin*. 875 F.2d at 1313. Almost twenty percent of TWU's locals operate without "forced fee requirements." *See* Pls.' Supplemental Br. 6, App. 3–4. It is therefore only speculative for TWU to assert that it would suffer financial hardship should Plaintiffs obtain their requested relief.

Additionally, this Court notes that *Gilpin* is not binding on this Court and has its critics. *See, e.g.*, *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 512 (D.N.M. 2004) (stating that "[t]he Defendants' reliance on *Gilpin* is misplaced, beyond the fact that its holding is not binding on this Court" and "even if some class members do not share the named Plaintiffs' [] motivation for the present litigation, that is insufficient alone to defeat class certification"); *Murray v. Local 2620, Dist. Council 57, Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO*, 192 F.R.D. 629, 633 (N.D. Cal. 2000) ("*Gilpin* is not persuasive because the Ninth Circuit has not denied class certification based on the types of reasoning and arguments used in *Gilpin*."). Accordingly, the Court declines to adopt the position of the Seventh Circuit in *Gilpin*.

Finally, the Court notes that any potential disagreement between some proposed class members and the class representatives is ameliorated by the position taken by TWU. To the extent that some proposed class members *may* oppose the claims and relief sought in this action, TWU will vigorously advocate their position. There are only two positions available to class members in this case: TWU's policies are either unconstitutional or they are constitutional. Therefore, to the extent the hypothetical conflicts asserted by TWU actually exist, they would not necessarily bar certification because TWU supports the constitutionality of TWU's policies. *See Horton*, 690 F.2d at 487–88 ("Though some members may disagree with the named plaintiffs, their position has been asserted energetically and forcefully by the defendant . . . and we can rely on the defendant to present to the court the arguments supporting the contention of any dissident absentees."). Furthermore, any proposed class member who opposes the claims and relief sought can opt out of the class.

According to the Fifth Circuit, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625–26 (5th Cir. 1999). Here, Plaintiffs have shown the requisite absence of antagonism and potential conflicts between the class representatives and the proposed class members. For the reasons previously discussed, TWU's speculations do not overcome this showing. Accordingly, the Court finds

that the proposed class representatives adequately represent the proposed class and that Plaintiffs have met all of the prerequisites of class certification under Rule 23(a).[2]

### C. Plaintiffs Meet the Necessary Requirements of Rule 23(b)

**1. The Proposed Class Does Not Meet the Requirements of Rule 23(b)(1)(A).** – Plaintiffs request the Court certify the proposed class under Rule 23(b)(1)(A). To satisfy the requirements of this Rule, Plaintiffs must establish that prosecuting separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23(b)(1)(A). According to the Supreme Court, this rule "takes in cases where the party is obliged by law to treat the members of the class alike . . . , or where the party must treat all alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotation marks omitted) (citation omitted). "Rule 23(b)(1)(A) is satisfied only in the event that inconsistent judgments in separate suits would trap the party opposing the class 'in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another.'" *McBirney v. Autrey*, 106 F.R.D. 240, 245 (N.D. Tex. 1985) (citation omitted).

---

[2]Additionally, TWU argues for the first time in its supplemental brief that, as TWU has eliminated the annual renewal requirement, there are conflicts of interest between members of the putative class and the class representatives in litigating this issue. That some nonmembers are subject to annual renewal and some are not does not necessitate a conflict of interest. It is entirely possible that those individuals who are not subject to the annual renewal requirement still object to its imposition on those who are subject to the requirement. Again, absent additional evidence, this speculation is insufficient to establish a conflict of interest for adequacy purposes.

Here, Plaintiffs seek declaratory and injunctive relief regarding the legality of TWU's policies. Even though TWU applies its policies to all nonmembers, conflicting orders on the constitutionality of these policies would not necessarily force TWU to violate one court order to abide by another. If one court found the policies to be constitutional, TWU could still alter its policies in accordance with an order that found the policies unconstitutional. An incompatible judgment would only occur if one court *required* TWU to continue its policies while another court *required* TWU to change them. *See Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortgage Ass'n*, 624 F.3d 185, 197–98 (5th Cir. 2010) ("Varying results with respect to these measures are not necessarily incompatible. For example, if one court failed to require Fannie Mae to cease its relationship with GMACCM, Fannie Mae could still end this relationship in order to comply with a different court order. Such action would not be 'incompatible' with the first court's order, but rather might exceed what that court demanded. An incompatible judgment would arise if one court *required* Fannie Mae to continue its relationship with GMACCM while another court *prevented* Fannie Mae from working with GMACCM." (footnote omitted)).

Certification under (b)(1)(A) is therefore inappropriate because separate actions would not necessarily lead to incompatible judgments.

**2. *The Proposed Class Meets the Requirements of Rule 23(b)(2).*** – Plaintiffs additionally request certification under Rule 23(b)(2). According to the Fifth Circuit, certification under (b)(2) is appropriate where the party opposing the class has established a regulatory scheme common to all class members. *Johnson v. Am. Credit Co. of Ga.*, 581

ORDER – PAGE 16

F.2d 526, 532 (5th Cir. 1978) (citing 7 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE

§ 1775, at 19–20, 21 (1972)).  Here, TWU's policies regarding fees, opting out, annual

renewal, and "forced loans" apply equally to all represented TWU nonmembers.

Additionally, the Fifth Circuit has set forth two requirements for certification under Rule

23(b)(2) when a class seeks classwide injunctive relief: "(1) the 'class members must have

been harmed in essentially the same way' . . . and (2) 'the injunctive relief sought must be

specific.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012)  (citations

omitted).  Here, Plaintiffs meet both of these requirements.

    The class members were harmed in essentially the same way because they were

obligated to pay fees and engage in policies that they allege are unconstitutional.  The mere

fact that they might have suffered different monetary damages does not negate the similarity

of the harm in this case.  The Fifth Circuit has noted that certification under (b)(2) "does not

extend to cases in which the appropriate final relief relates exclusively or predominately to

monetary damages." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998).

The Fifth Circuit has explained that "monetary relief predominates in (b)(2) class actions

unless it is incidental to requested injunctive or declaratory relief." *Id*.  Monetary relief is

incidental only when "damages . . . flow directly from liability to the class *as a whole* on the

claims forming the basis of the injunctive of declaratory relief." *Id.* (emphasis in original).

Furthermore, "[l]iability for incidental damages should not require additional hearings to

resolve the disparate merits of each individual's case, [nor should it] introduce new and

substantial legal or factual issues [or] entail complex individualized determinations." *Id.*

ORDER – PAGE 17

Here, any requested monetary damages are only incidental to the predominate relief because they flow directly from any liability on the claims that form the basis for the requested injunctive and declaratory relief, specifically the permissibility of TWU's policies.

Plaintiffs also meets the Fifth Circuit's second requirement because the relief they seek is specific. According to their complaint, Plaintiffs seek (1) a declaration that the RLA's authorization of compulsory union fees is unconstitutional; (2) a declaration that the opt out requirement is unconstitutional; or (3) a declaration that requiring annual renewal and "forced loans" is unconstitutional. Pls.' First Am. Compl. 15–16. Plaintiffs also request the Court enjoin TWU from engaging in these specific activities, *see id.* at 16, and grant a permanent injunction requiring TWU to inform their employees of the final order. *Id.* This requested injunctive relief is highly specific, and the acts that would be covered by an injunction are laid out in sufficient detail such that the "individuals against whom an injunction is directed [would] receive explicit notice of the precise conduct that is outlawed." *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980) (citation omitted). The Court therefore finds that certification is proper under Rule 23(b)(2).

### 3. The Proposed Class Meets the Requirements of Rule 23(b)(3). – Plaintiffs

alternatively request that the Court certify the class under Rule 23(b)(3). To certify a class under (b)(3) the court must find that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *see also Funeral Consumers Alliance, Inc. v. Serv.*

*Corp. Int'l*, 695 F.3d 330, 348 (5th Cir. 2012). In determining "predominance" and "superiority", the Court looks to, among other matters, (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class actions. FED. R. CIV. P. 23(b)(3). The Court addresses the requirements of predominance and superiority in turn.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). As has been recited repeatedly in this Order, Plaintiffs in this case challenge both the constitutionality of the RLA's authorization of compulsory union fees and the constitutionality of various TWU policies. Whether the RLA's authorization of compulsory union fees and various TWU policies violate the First Amendment is therefore the question of law common to all class members. There are no other legal issues in this case. And because the case presents mainly legal issues, there are minimal questions of fact. The only individualized factual inquiry required in this case is the amount of damages each class members could receive. The Fifth Circuit has found no abuse of discretion in certification under Rule 23(b)(3) where there required individualized calculation of damages because "every issue prior to damages [was] a common issue." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir.

2001). This is precisely the scenario before this Court, and the Court accordingly finds that the "predominance" requirement of Rule 23(b)(3) has been satisfied.

"[T]he superiority analysis is fact-specific and will vary depending on the circumstances of any given case." *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013) (internal quotation marks omitted) (citation omitted). In *Roper v. Consurve*, 578 F.2d 1106 (5th Cir. 1978), *aff'd sub nom. Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980), the Fifth Circuit noted that a case was "a classic case for Rule 23(b)(3) class" where "[t]he claims of a large number of individuals can be adjudicated at one time, with less expense than would be incurred in any other form of litigation. The claims are relatively small . . . and the question of law is one that applies alike to all." *Id.* at 1112. Moreover, "[w]hile it may be necessary to make individual fact determinations with respect to charges, if that question is reached, these will depend on objective criteria that can be organized by a computer, perhaps with some clerical assistance. It will not be necessary to hear evidence on each claim." *Id.*

Again, this is the precise scenario before the Court in this case. Because all individuals in the class have the same claims, it is efficient to adjudicate them in one forum. Additionally, the monetary claims of the individuals are relatively small, *see* Pls.' Br. 19–20, 20 n.2, and could be calculated formulaically and without the need for additional hearings. *See* Pls.' Br. 20. Also, the small potential damage award in this case provides little incentive for individuals to pursue their claims individually. *Amchem Prods., Inc.*, 521 U.S. at 617 (noting that certification under Rule 23(b)(3) contemplates "the rights of groups of people

who individually would be without effective strength to bring their opponents into court at all.").  The Court accordingly finds that the "superiority" requirement of Rule 23(b)(3) has been satisfied.

The Court therefore finds that certification is appropriate under Rule 23(b)(3).  Thus, should it hereafter be determined that certification under Rule 23(b)(2) is inappropriate, the court would still certify the class under Rule 23(b)(3).

***4. The Court Orders That Class Members Be Given Notice And An Opportunity to Opt Out.*** – Notice to class members and the opportunity to opt out of the class are mandatory rights in a class action certified under Rule 23(b)(3).  FED. R. CIV. P. 23(c)(2)(B); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004).  A court has discretion to order notice and an opportunity to opt out in class actions certified under either Rule 23(b)(1) or Rule 23(b)(2).  FED. R. CIV. P. 23(c)(2)(A); *In re Monumental Life Ins. Co.*, 365 F.3d at 416.

Because the Court had found that certification is warranted under Rule 23(b)(2), the Court exercises its discretion and orders that notice and an opportunity to opt out be provided to the class.  Such notice will address any due process concerns that may arise in class actions involving monetary damages.  *See In re Monumental Life Ins. Co.*, 365 F.3d at 416–17 (noting "due process requires the provision of notice where a rule 23(b)(2) class seeks monetary damages," but "there is no absolute right of opt-out in a rule 23(b)(2) class, 'even where monetary relief is sought and made available.'" (citing *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 994 (5th Cir. 1981))).

### D. Plaintiffs' Requested Counsel Meet the Requirements for the
### Appointment of Class Counsel Under Rule 23(g)

Once a class has been certified, the Court must appoint class counsel. FED. R. CIV.

P. 23(g). The Court may appoint the applicant seeking appointment where the applicant

satisfies the requirements of Rule 23(g)(1) and Rule 23(g)(4). FED. R. CIV. P. 23(g)(2).

Specifically, the Court must consider:

> (i)   the work counsel has done in identifying or investigating potential claims in the action;
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv)  the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). The Court must also consider whether the requested counsel

fairly and adequately represents the interests of the class. FED. R. CIV. P. 23(g)(4).

Plaintiffs request that this Court appoint Milton L. Chappell, David E. Watkins, Jason

Edward Winford, and Nathan J. McGrath as class counsel. *See* Pls.' Br. 21. Mr. Chappell

and Mr. McGrath have vast experience in cases involving unions and, as staff attorneys for

the Foundation, have a variety of resources at their disposal. Moreover, both Mr. Watkins

and Mr. Winford are experienced in labor and employment law. The attorneys are therefore

qualified to serve as class counsel under Rule 23(g)(1)(A).

TWU asserts that the Foundation's ideology prevents its staff attorneys from fairly

and adequately representing the interest of the class; the Court is not persuaded. TWU bases

this argument on potential conflicts of interest between the Foundation and proposed class

members who "favor continuation of a legal regime that makes effective union representation

possible by requiring that all represented employees pay their fair share of TWU's collective bargaining-related costs." *See* Def.'s Resp. 19–20. TWU's assertion that Foundation attorneys cannot adequately represent the class in this case is based on conjecture, as it has offered no evidence in support of these purported conflicts of interest. As previously discussed, with one narrow exception, TWU has not established that any class member is actually opposed to this litigation or the relief sought therein. The Court therefore declines to consider such speculation as establishing an absence of fair and adequate representation of the class. *See Lee v. Am. Airlines, Inc*., 2002 WL 31230803, at *8 (N.D. Tex. 2002) (considering the adequacy of class counsel and noting that "any allegations of potential conflict are very speculative and hypothetical" and "[m]any courts have held that speculative conflict should be disregarded at the class certification stage." (internal quotation marks omitted) (citation omitted)). In short, TWU is not entitled to a veto of proposed class counsel because they strongly believe in the correctness of their position.

## CONCLUSION

The Court grants Plaintiffs' motion for class certification and appointment of class counsel. The certified class is all former, present, and future nonmembers of TWU, excluding former nonmembers who have since joined the union. The Court appoints Milton L. Chappell, David E. Watkins, Jason Edward Winford, and Nathan J. McGrath as class counsel. The Court further orders that the parties confer regarding the notice to be provided to class members and provide a status report to the Court regarding the same within twenty-one (21) days of this Order. This deadline is stayed if either party appeals this Order.

Signed December 3, 2014.

David C. Godbey
United States District Judge