IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE SERNA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-2469-N |
| | § | |
| TRANSPORT WORKERS | § | |
| UNION OF AMERICA, AFL-CIO, | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant Transport Workers Union of America, AFL-CIO's ("TWU") motion for summary judgment [Doc. 54] and Plaintiffs Jose Serna, Mary Richardson, Roberto Cruz, Santos Cordero, Sari Madera, Ralph Anderson, Warren Lambert, Greg Hofer, and Kent Hand's motion for summary judgment [61]. The Court grants TWU's motion and denies Plaintiffs' motion.

## I. THE LABOR DISPUTE

Defendant Transport Workers Union of America ("TWU") is the collective bargaining representative for thousands of railroad and airline workers under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-88. Def.'s Mot. Summ. J. 4. TWU provides collective bargaining services such as negotiating collective bargaining agreements with employers and enforcing and administering these agreements. *Id.* at 5. Plaintiffs are, or at one point were, airline workers such as flight attendants and fleet-service workers with Envoy Air, Inc.,

ORDER – PAGE 1

formerly American Eagle Airlines, Inc., and Southwest Airlines Co. who seek to challenge certain TWU policies. Plaintiffs are, or at one point were, nonmembers of the union. Pls.' First Am. Compl. 4 [37].

For the purposes of this Order, the Court construes the amended complaint as having four counts. First, Plaintiffs allege that the RLA's authorization of compelled union fees violates the First Amendment. Second, Plaintiffs allege that TWU's opt-out choice structure for union fees violates the First Amendment. Third, Plaintiffs allege that TWU's requirement that nonmembers renew their objections annually violates the First Amendment. Fourth, Plaintiffs allege that TWU's escrow-and-rebate procedure for collecting dues violates the First Amendment. Plaintiffs request declaratory, injunctive, and monetary relief.

On December 3, 2014, the Court certified a class of "all former, present, and future nonmembers of TWU, excluding former nonmembers who have since joined the union." *See* Order, Dec. 3, 2014, at 23 [71]. The parties now move for summary judgment. On December 12, 2014, the United States intervened in this action to defend the constitutionality of the RLA. *See* Notice of Intervention, Dec. 12, 2014 [72].

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. THE COURT GRANTS TWU'S MOTION FOR SUMMARY JUDGMENT

### A. *Claim One: Compelled Union Fees*

In their first claim, Plaintiffs challenge the constitutionality of the so-called "union shop provision" of the RLA, 45 U.S.C. § 152, Eleventh. Under the union shop provision, union agreements may require all represented employees to either join the union or pay a fee to the union for the fair cost of representation. *See Shea v. Int'l Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508, 513 (5th Cir. 1998). The relevant portion of the Act provides as follows.

> Notwithstanding any other provisions of this chapter, . . . any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted--
> **(a)** to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class[.]

45 U.S.C. § 152, Eleventh. Despite the literal language of the statute, the Act "is to be construed to deny the unions, over an employee's objection, the power to use his exacted funds to support political causes which he opposes." *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961); *accord Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 291 (4th Cir. 1991) ("[U]nder the RLA, nonmember objecting employees can only be compelled to pay for activities germane to collective bargaining."); *see Marden v. Int'l Ass'n of Machinists & Aerospace Workers*, 576 F.2d 576, 579 (5th Cir. 1978) ("[A] collective bargaining

agreement can require an employee to share in the expenses of union activity; it may not mandate that he actually join the union as a condition of employment.").

TWU's collective bargaining agreements with Southwest and American Eagle contain union security clauses that require all represented employees, regardless of whether they are members of the union, to pay their share of costs related to TWU's collective bargaining activities. Def.'s Mot. Summ. J. 6. An independent auditor determines the amount of expenses that relate to TWU's collective bargaining ("chargeable") and the amount that relates to "nonchargeable" expenses such as charitable and political contributions. *Id.* at 7.

Plaintiffs maintain that compulsory union fees "are a prior restraint on speech and violate the free association rights of employees who reject Union membership." Pls.' Am. Compl. ¶ 25. Yet, as Plaintiffs acknowledge, existing law forecloses their challenge to the union shop provision.[1] In *Railway Employees' Department v. Hanson*, the Court held "that the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work is within the power of Congress under the Commerce Clause and does not violate either the First or the Fifth Amendments." 351 U.S. 225, 238 (1956); *accord Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employes*, 466 U.S. 435, 439 (1984) ("[The employees] do not contest the legality of the union shop . . . , nor could they.")

---

[1] In their motion for summary judgment, Plaintiffs assert that they "recognize that existing Supreme Court precedent in *Railway v. Employes' Department v. Hanson*, 351 U.S. 225 (1956), probably forecloses their request in Count I, but the Workers preserve that Count for appellate review[.]" Pls.' Mot. Summ. J. 15; *see* Pls.' Reply 1 [69] ("Count I Anticipates a Change in the Law[.]).

ORDER – PAGE 5

Although subsequent Supreme Court cases have arguably indicated some concern regarding the soundness of *Hanson*, *e.g.*, *Harris v. Quinn*, 134 S. Ct. 2618, 2629 (2014) ("The First Amendment analysis in *Hanson* was thin, and the Court's resulting First Amendment holding was narrow."), it is not the role of this Court to deviate from established, binding jurisprudence. Because *Hanson* makes clear that the union shop provision of the RLA is constitutional, the Court grants summary judgment in favor of TWU on Plaintiffs' first claim.

### B. *Claim Two: Opt-Out Structure*

TWU has established a Policy on Agency Fee Objections (the "Policy") for employees who object to paying nonchargeable expenses.[2] *See* Def.'s Mot. Summ. App. 44–47. Under the Policy, objectors must opt out of paying nonchargeable expenses by mailing notice of

---

[2]In a footnote, TWU maintains that Plaintiffs' claims regarding how it administers the Policy (claims 2, 3, and 4) "all fail because TWU is a private entity whose actions are not subject to constitutional scrutiny." Def.'s Mot. Summ. J. 15 n.9. The Court disagrees. In *Hanson*, the Supreme Court stated that "[i]f private rights are being invaded, it is by force of an agreement made pursuant to federal law which expressly declares that state law is superseded." 351 U.S. at 232. The Fifth Circuit has described the implication of government action in this arena as follows: "the RLA . . . preempts state laws that ban union shop agreements, and this preemption has been held to be sufficient governmental action to trigger constitutional limitations." *Shea*, 154 F.3d at 516. Although language in *Harris* perhaps "suggests that the Supreme Court may revisit this issue and hold otherwise," Def.'s Mot. Summ. J. 15 n.9, the Supreme Court has yet to do so. Under current case law, TWU's policies are subject to constitutional review.

The Court further disagrees with TWU's assertion that the challenge to the opt-out structure is moot. On December 3, 2014, the Court certified the class as specified above. Accordingly, because some members of the class (for example, future nonmembers) would be required to opt out of the fee requirement, the claim is not moot.

their objections to TWU's Secretary Treasurer and to their local union. *Id.* at 44. Plaintiffs maintain that this choice structure violates the First Amendment.

Again, existing precedent forecloses Plaintiffs' argument. In *Street*, the Supreme Court held that the RLA did not permit a union to require an *objecting* employee to pay for nonchargeable expenses. 367 U.S. at 768–69. In so deciding, the Court stated:

> The safeguards of s 2, Eleventh were added for the protection of dissenters' interest, but dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee. The union receiving money exacted from an employee under a union-shop agreement should not in fairness be subjected to sanctions in favor of an employee who makes no complaint of the use of his money for such activities.

*Id.* at 774; *see Bhd. of Ry. & S. S. Clerks, Freight Handlers, Express & Station Employes v. Allen*, 373 U.S. 113, 118–19 (1963) ("[W]e made clear in *Street* that 'dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee.'"). The Fifth Circuit also acknowledges that an opt-out procedure is permissible. In *Shea*, the Fifth Circuit considered a policy that required employees to object annually. 154 F.3d at 510. In striking down the annual renewal requirement, the Court stated, "[c]ertainly the procedure that least interferes with an employee's exercise of his First Amendment rights is the procedure by which an employee can object in writing on a continuing basis." *Id.* at 515. Now that TWU has removed the annual renewal requirement, this is precisely the scenario before this Court. As *Shea* acknowledges, this procedure is fully permissible.

Plaintiffs rely on *Knox v. Service Employees International Union*, 132 S. Ct. 2277 (2012), in support of their position that the opt-out requirement is unconstitutional. The

ORDER – PAGE 7

Court in *Knox* struck down a special assessment for political activities in the public sector where the period for objections had already expired. 132 S. Ct. at 2291. While the Court in *Knox* might have "suggest[ed] that it is poised to require opt in for other union expenditures," Catherine L. Fisk & Erwin Chemerinsky, *Political Speech and Association Rights After* Knox v. SEIU, Local 1000, 98 CORNELL L. REV. 1023, 1026 (2013) (citing *Knox,* 132 S. Ct. 2277, 2295-96 (2012)), it has not yet done so. Because current case law makes clear that the opt-out structure for chargeable fees is permissible, the Court grants summary judgment in favor of TWU on Plaintiffs' second claim.

### C. Claim Three: Annual Renewal

In their third claim, Plaintiffs challenge the constitutionality of the Policy's requirement that objecting nonmembers annually renew their objection. TWU maintains that this claim is moot because "TWU has repealed that requirement." Def.'s Mot. Summ. J. 3. "Under the current TWU policy, a nonmember need submit an objection just once and that objection is deemed a continuing one." *Id.* at 8. According to TWU's Chief of Staff and Director of Accounting, "TWU has no intention to ever reinstate this renewal requirement." Def.'s Mot. Summ. J. App. 41.

Plaintiffs maintain that under the voluntary cessation doctrine, the claim is not moot. "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox*, 132 S. Ct. at 2287. Regardless, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful

behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (alteration in original) (quoting *Concentrated*, 393 U.S. at 203).

In its motion for summary judgment, TWU acknowledges that its annual renewal requirement "was inconsistent with governing Fifth Circuit law." Def.'s Mot. Summ. J. 20. TWU does not defend the constitutionality of this requirement. TWU cannot reasonably be expected to engage in conduct that it acknowledges is contrary to binding precedent. *See Carlson v. United Academics*, 265 F.3d 778, 786 (9th Cir. 2001) ("It is unreasonable to think that the Union would resort to conduct that it had admitted in writing was constitutionally deficient and had attempted to correct[.]"). Accordingly, this claim is moot.

### D. Claim Four: Escrow-and-Rebate Procedures

Employees represented by TWU have the option of having their employer automatically deduct dues from their paycheck. Def.'s Mot. Summ. J. App. 41. Where a nonmember who has opted out elects automatic deduction, TWU collects the entire dues amount (both chargeable and nonchargeable). *Id.* The nonchargeable portion is placed in an interest bearing escrow account with a cushion of an additional 50% of that amount and is subsequently refunded with interest to the nonmember.[3] *Id* at 41, 46. Plaintiffs challenge

---

[3]Where a nonmember decides to pay his dues directly, he is only required to pay for chargeable expenses. Def.'s Mot. Summ. J. 41.

the constitutionality of the escrow-and-rebate procedure, which they refer to as a "forced loan."

In support of their argument that the escrow-and-rebate procedure is unconstitutional, Plaintiffs rely on *Ellis*. At issue in *Ellis* was a rebate program whereby the union "exact[ed] *and us*[*ed*] full dues" and subsequently returned the nonchargeable amount without interest. 466 U.S. at 444 (emphasis added). In striking down the rebate program, the Supreme Court noted the availability of "acceptable alternatives" including the use of "interest-bearing escrow accounts." *Id.* at 444. That is precisely the scenario before this Court. TWU does not use the nonchargeable amount they receive from objectors, but rather places it into an escrow account. TWU later refunds the money to the objecting employee with interest. Circuit courts have upheld the constitutionality of such a escrow-and-rebate procedure. *E.g.*, *Pilots Against Illegal Dues (PAID) v. Air Line Pilots Ass'n (ALPA)*, 938 F.2d 1123, 1133 (10th Cir. 1991) ("The [escrow-and-rebate] procedure ensures that agency fees will not be used even temporarily for improper purposes."); *Crawford v. Air Line Pilots Ass'n Int'l*, 870 F.2d 155, 161 (4th Cir. 1989) *on reh'g*, 992 F.2d 1295 (4th Cir. 1993) ("This court has interpreted *Ellis* to permit an escrow-and-rebate plan."). In light of this authority, the Court holds TWU's procedure for rebating nonchargeable dues is constitutional and grants summary judgment in favor of TWU.[4]

---

[4]The Court briefly notes that *Chicago Teachers v. Hudson*, 467 U.S. 292 (1986) does not compel a different outcome. In that case, the Supreme Court did not hold that the use of an escrow-and-rebate procedure was unconstitutional. Rather, the Court held that the use of escrow *alone* was not sufficient to cure a deficient procedure that, among other issues, failed to provide sufficient information to nonmembers regarding fees. 467 U.S. at 310.

## CONCLUSION

The Court grants TWU's motion for summary judgment and denies Plaintiffs' motion for summary judgment.

Signed March 30, 2015.

_____
David C. Godbey
United States District Judge